610 So.2d 1366 (1992)
Michael LAMBRIX, Appellant,
v.
Richard L. DUGGER, Secretary, Florida Department of Corrections, Tim Barton, Superintendent, Florida State Prison, and L.E. Turner, Assistant Superintendent, Florida State Prison, Appellees.
No. 91-3282.
District Court of Appeal of Florida, First District.
December 30, 1992.
*1367 Michael Lambrix, pro se, for appellant.
Robert A. Butterworth, Atty. Gen., and P. Tim Howard, Asst. Atty. Gen., Tallahassee, for appellees.
ZEHMER, Judge.
Michael Lambrix appeals a final order granting summary judgment in favor of Appellees, Richard L. Dugger, Tim Barton, and L.E. Turner, in Lambrix's civil rights action pursuant to 42 U.S.C. § 1983. Finding no error in the trial court's ruling, we affirm.
Lambrix is an inmate at Florida State Prison. He filed a complaint against Appellees, individually and in their official capacities, seeking declaratory and injunctive relief, and compensatory and punitive damages. The complaint alleges that in August 1990, pursuant to Appellant's request, Barton sent $30 from Appellant's prison account to Midwest Productions, a mailorder company; and that thereafter Turner twice intercepted Appellant's receipt through the mail of "nonpersonal commercially produced `sexually explicit'" photographic materials that he ordered from Midwest Productions, claiming that the materials were "contraband." The complaint further alleges that Appellees denied Appellant's requests for informal and formal grievance and administrative relief regarding this interception of his mail, and that Barton denied Appellant's request for a permit or instructions on how Appellant could receive the photographic materials, stating that no provision in the prison rules allowed Appellant to receive the photographic materials. Appellees moved to dismiss or, alternatively, for summary judgment.
The trial court granted Appellees' motion for summary judgment, ruling that:
3. Plaintiff fails to state a claim against Defendants in that there is no allegation of facts that would constitute a violation of Plaintiff's rights. The confiscated photos at issue were contraband, as defined in Chapter 33, Florida Administrative Code.
4. Defendants have constitutional authority to limit sexually explicit photographs which threaten the security and orderly operation of the institution. See Thornburg [sic] v. Abbott, et al., [490 U.S. 401], 198 [109] S.Ct. 1874 [104 L.Ed.2d 459] (1989); Turner v. Safely, 482 U.S. 78 [107 S.Ct. 2254, 96 L.Ed.2d 64] (1987); Bell v. Wolfish, 441 U.S. 520 [99 S.Ct. 1861, 60 L.Ed.2d 447] (1979); See also Fla. Admin. Code Rules 33-3.004(6)(a), (7); 3.0045(4)(c); 3.006(1)(a)5. (b); and 3.012(4)(a).
5. Plaintiff fails to state a claim for injunctive or declaratory relief. Plaintiff's request for temporary injunctive relief is precluded by the doctrine of res judicata. See Order dated March 11, 1991, Lambrix v. Dugger, et al., Case 89-840-Civ.-J-14 (M.D.Fla. 1991).

*1368 6. Plaintiff fails to state a claim for exemplary damages.
7. There are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. Fla. R.Civ.P. 1.510(c).
Lambrix contends that the summary judgment order is in error because he has a constitutional right under the First and Fourteenth Amendment to receive and possess "sexually explicit" photographic materials obtained through non-personal, commercial enterprises. He argues that he is entitled to receive such photographs because Appellees have made virtually no showing as to how such photographs interfere with the security or orderly operation of the prison. Also, he argues, since he is being held in "administrative confinement," the photographic materials are not available to other prisoners.
We agree with Appellees that Lambrix has not identified any existing genuine issue of material fact or error of law that would require us to reverse the summary judgment.
The United States Supreme Court has accorded considerable deference to prison officials to regulate the relations between prisoners and the outside world by prison regulations outlining the type of communications that can be made between these two groups, based on its recognition that "`courts are ill equipped to deal with the increasingly urgent problems of prison administration and prison reform.'" Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). The Court also has stated with respect to the right of prison officials to regulate incoming publications requested by an individual inmate:
We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly... . As the Deputy Solicitor General noted at oral argument, "[t]he problem is not ... in the individual reading the materials in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential the prison officials be given broad discretion to prevent such disorder.
Thornburgh v. Abbott, 490 U.S. 401, 412-13, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989) (citations omitted). Such prison regulations are valid if they are reasonably related to legitimate penological interests such as protecting prison security. Id. at 412-13, 109 S.Ct. at 1881-82.
In this case, the prison regulations promulgated by the Department of Corrections clearly prohibit Appellant from receiving the photographic materials at issue because the materials by their nature and content as well as by the apparent intended use may "pose[] a threat to the security, good order, or discipline of the institution, or facilitate[] criminal activity." Rule 33-3.012, Fla. Admin. Code. Rule 33-3.004, Florida Administrative Code, provides in pertinent part:
(6) Outgoing or incoming mail may be disapproved for mailing or delivery to the inmate if any part of it:
(a) is obscene or contains a graphic presentation of sexual behavior that is in violation of law.
* * * * * *
(7) No inmate may establish or conduct a business through the mail during his period of incarceration.
Rule 33-3.0045 provides in pertinent part:
(4) No package may be received if:
* * * * * *
(c) it contains contraband (including any item not specifically approved on the Package Permit).
Rule 33-3.012, entitled "Admissible Reading Material," provides in pertinent part:
(4) Inmates shall be permitted to receive publications except when the publication *1369 is found to be detrimental to the security, order or disciplinary or rehabilitative interests of the institution or when it is determined that the publication might facilitate criminal activity. Publications shall be rejected when one of the following criteria is met:
* * * * * *
(g) It contains a graphic presentation of sexual behavior which is in violation of law or it is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity.
The photographic materials received by Lambrix were ordered through a catalogue and depicted several women in various "sexually suggestive" poses. Some women were in scanty clothing, while others were partially or wholly nude. Upon request, such photographic materials could be accompanied by the women's names, birth dates, weight, body measurements, eye and hair color, "nude" slides, and videos, as some were in this case. Appellant does not dispute the trial court's finding that the photographs are sexually explicit, nor does he argue that they are not obscene; the complaint itself refers to the photographs as being "sexually explicit." The record contains a handwritten letter from a Midwest representative in which the possibility of developing a business relationship with Appellant through the mail is discussed. The record also contains the uncontroverted affidavit of Paul Decker, Assistant Superintendent for Programs at Florida State Prison, averring that Appellant did not have a permit to receive the material, that the Midwest catalogue was not approved by the Department as "admissible reading material," and that correspondence between Lambrix and the Midwest agent indicates that a business relationship was being developed to include a distribution system and expansion of the product to include personalized letters to supplement the pictures. The affidavit also states that:
The addition of personalized letters would create bonding of the inmate recipient with the woman in the photograph to a far more significant level than those photographs in adult magazines. Similar nude photographs of an inmate's girlfriends or wife are not permitted due to the volatile nature of an inmate when comments are made or such photographs are stolen or damaged.
The receipt of these materials was in clear violation of the cited regulations. In light of this record, the trial court correctly ruled that Appellant had no right under the federal constitution, or any statute or regulation, to receive the materials in question. Trapnell v. Riggsby, 622 F.2d 290 (7th Cir.1980).
AFFIRMED.
ERVIN and BARFIELD, JJ., concur.